FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

2009 JUN 26  A  9: 52

DISTRICT OF UTAH, NORTHERN DIVISION

DISTRICT OF UTAH

BY:_____

| | |
|---|---|
| BASHIRA CHOWDHURY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA INSURANCE<br>COMPANY,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br><br>Case No. 1:07-cv-00095 CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

In this action, Plaintiff Bashira Chowdhury seeks payment of life insurance benefits due to the death of her mother, Ferdaus Chowdhury ("Mrs. Chowdhury"). Defendant United of Omaha Insurance Company ("United of Omaha") has denied the claim and rescinded the life insurance policy. It did so based on alleged material misrepresentations Mrs. Chowdhury made in her life insurance application and subsequent telephone interview with a United of Omaha underwriter. This matter is before the court on United of Omaha's Motion for Summary Judgment and Motion to Strike Affidavit. United of Omaha seeks both dismissal of Plaintiff's claims and declaratory judgment that the life insurance policy is rescinded. After due consideration of the memoranda, other documents, oral argument, and the facts and law relevant to this matter, the court renders the following Memorandum Decision and Order.

## **FACTUAL BACKGROUND**

On May 30, 2003, Mrs. Chowdhury applied for a $225,000 life insurance policy with United of Omaha (the "Policy").[1] "This is the maximum amount of insurance" that United of Omaha will "allow the applicant to purchase without requiring her to undergo a paramedical exam and provide a blood sample."[2] The application asked if Mrs. Chowdhury consulted with a health provider or received care or treatment for diabetes or coronary issues during the past ten years.[3] Mrs. Chowdhury answered "No" on the application.[4] The application also asked if she had been hospitalized in the past ten years.[5] To this, Mrs. Chowdhury answered "Yes," and listed pneumonia in March 2003 as the reason.[6] She also stated on the application that she had not taken any prescription medication in the past six months.[7]

On June 25, 2003, a United of Omaha underwriter telephoned Mrs. Chowdhury and also asked her questions about her health and family history.[8] The interview was electronically recorded, and the transcript indicates that Mrs. Chowdhury provided substantially the same answers during the

---

[1]  Plaintiff was listed as the beneficiary on the life insurance policy application. Life Insurance Application, at 4 (Docket No. 22, Ex. 1).

[2]  Declaration of Gerald Bender, ¶ 5 (Aug. 15, 2008) (Docket No. 24).

[3]  Life Insurance Application, at 5 (Docket No. 22, Ex. 1).

[4]  Id.

[5]  Id.

[6]  Id.

[7]  Id. at 6.

[8]  Transcript of Telephone Interview (Docket No. 24, Ex. 1); Declaration of Gary Bender, ¶ 12 (Aug. 15, 2008) (Docket No. 24).

telephone interview that she provided on her application.[9]  During the interview, Mrs. Chowdhury also reported that her mother died at age 83 and her father died at age 60 of natural causes.[10]  She further reported that neither had diabetes.[11]  Based on these representations and others, United of Omaha issued the Policy to Mrs. Chowdhury, with an effective date of June 5, 2003.[12]

On July 17, 2004, Mrs. Chowdhury died as a result of anoxic brain injury, with a cardiopulmonary arrest as a contributing cause.[13]  United of Omaha received notice of Mrs. Chowdhury's death on or about July 28, 2004.[14]  Because she died within two years after the Policy was issued, United of Omaha started a claim investigation.[15]  It obtained authorizations for the release of medical information from Plaintiff.[16]  It gave these authorizations to its investigator, Worldwide Resources, Inc. ("Worldwide"), and that investigator obtained Mrs. Chowdhury's medical records from various sources.[17]

United of Omaha also sent a form to Mrs. Chowdhury's physician to obtain more information

---

[9]  Compare Transcript of Telephone Interview (Docket No. 24, Ex. 1) with Life Insurance Application, at 5 (Docket No. 22, Ex. 1).

[10]  Id.

[11]  Id.

[12]  Life Insurance Policy, at 1 (Docket No. 22, Ex. 3).

[13]  Physician's Statement, at 1 (Docket No. 29, Ex. B).

[14]  Declaration of Frank Theisen, ¶ 4 (Aug. 14, 2008) (Docket No. 23).

[15]  Id.  Mrs. Chowdhury had two other insurance policies with United of Omaha, each for $225,000.  Because the policies were more than two years old at the time of Mrs. Chowdhury's death, United of Omaha paid out those proceeds without doing an investigation.

[16]  Declaration of Frank Theisen, ¶ 4 (Docket No. 23).

[17]  Id.

-3-

about her death.[18]  The Physician's Statement is dated September 14, 2004 and has a date stamp of

October 1, 2004, which shows the date of receipt by United of Omaha's Life Claims division.[19]

Besides stating the cause of death, the Physician's Statement disclosed that Mrs. Chowdhury had

chronic diabetes mellitus.[20]  The physician, however, left blank the date of onset.

On October 21, 2004, United of Omaha received a report from Worldwide that contained

records from South Davis Community Hospital.[21]  Included among those records were an Admission

HP and a Discharge Summary from the University of Utah.[22]  The Admission HP was dated May 23,

2004.  It disclosed that Mrs. Chowdhury had "a past medical history of Insulin dependent [diabetes

mellitus]."[23]  The "PMH" (prior medical history) stated that Mrs. Chowdhury had diabetic peripheral

neuropathy, hypertension or high blood pressure, depression, and other medical conditions.[24]  It also

stated that "all of her siblings have [diabetes mellitus], as did her mother and father."[25]

The Discharge Summary was dated June 4, 2004.  It stated that Mrs. Chowdhury had "a

history of insulin-dependent diabetes, obstructive sleep apnea and renal insufficiency."[26]  It further

---

[18]  Physician's Statement (Docket No. 29, Ex. B).

[19]  Id.

[20]  Id.

[21]  Declaration of Frank Theisen in Response to Court's Order, ¶¶ 6–7, dated May 15, 2009 (Docket No. 44).

[22]  Id. ¶ 6.

[23]  Admission HP, CHO000190 (Docket No. 44, Ex. A).

[24]  Id.

[25]  Id. at CHO000191.

[26]  Discharge Summary, CHO000193 (Docket No. 44, (Ex. A).

stated the renal failure was chronic.[27] Neither the Admission HP nor the Summary Discharge listed the date of onset for any of these conditions.

Worldwide submitted another report to United of Omaha with a report date of November 5, 2004.[28] United of Omaha contends it received the University of Utah medical records on November 10, 2004.[29] A date stamp on Worldwide's report appears to support that fact.[30] The medical records that Defendant received from the University of Utah Hospital disclosed that Mrs. Chowdhury was insulin dependent and had "a history or [sic] type 1 diabetes since 1986."[31] They likewise disclosed that her family history was "[s]ignificant for diabetes in both parents,"[32] and "[p]ositive for all of her siblings having diabetes mellitus."[33]

On November 24, 2004, Kathy Douglas in United of Omaha's Life Claims unit sent a memorandum to George Diaz in Underwriting, asking him to review the medical records United of

---

[27] Id. at CHO000195.

[28] Plaintiff's Documents for December 19, 2008 Hearing, Ex. 2; Declaration of Frank Theisen in Response to Court's Order, ¶¶ 6–7, dated May 15, 2009 (Docket No. 44).

[29] Defendant's Answers to Plaintiff's First Set of Interrogatories, at 25 (Docket No. 29, Ex. C).

[30] Id.

[31] University of Utah Hospitals and Clinics Notes, CHO000190 (Docket No. 29, Ex. D); Defendant's Responses to Plaintiff's First Set of Requests for Admissions, at 4 (Docket No. 29, Ex. E).

[32] Univ. of Utah Hospitals and Clinics, Office Visit Note, CHO000154 (Docket No. 29, Ex. D).

[33] Univ. of Utah Hospitals and Clinics, Consultation Note, CHO000157 (Docket No. 29, Ex. D).

Omaha had received during its investigation.[34]  On November 30, 2004, Diaz wrote a handwritten memorandum back to Douglas informing her that Mrs. Chowdhury "[p]er claim file was insulin dependent diabetic since 1986."[35]  Had United of Omaha known about Mrs. Chowdhury's condition, Diaz stated "she would have had to have current blood profile vs. oral fluid.   Gross misrepresentation."[36]  Diaz then posed the question, "Do we have any recourse under fraud doctrine here? . . . Seems we were deliberately mislead here to avoid getting blood profile."[37]

On December 29, 2004, United of Omaha engaged Worldwide to obtain additional medical records of Mrs. Chowdhury.[38]  It received these additional medical records on January 19, 2005 from Dr. Steven Tucker, Davis Hospital and Medical Center, and the Tanner Memorial Clinic.  Besides confirming Mrs. Chowdhury's diabetes, they also confirmed that she had a history of depression, renal insufficiency, and hypertension.[39]  They further disclosed that "[h]er father died of a myocardial infarction at age 45.  He also had diabetes at the time."[40]

After reviewing these medical records, United of Omaha concluded that Mrs. Chowdhury

---

[34] Besides the medical information listed above, United of Omaha has not reported receiving any other medical records between November 10, 2004 and November 24, 2004.

[35] Handwritten Memorandum, CHO000056–57 (Nov. 30, 2004) (Docket No. 29, Ex. D).

[36] Id. at CHO000056.

[37] Id. at CHO000057.

[38] See Worldwide Resources Inc., Flat Rate Program Case Request, CHO000058 (Docket No. 29, Ex. D).

[39] Davis Hosp. and Medical Center record, CHO000133(Docket No. 29, Ex. D).

[40] Id. at CHO000130.

had significant risk factors.[41] Had these risk factors been disclosed, Mrs. Chowdhury would not have been issued a preferred policy, and likely would have been denied coverage.[42]   Accordingly, on March 8, 2005, United of Omaha sent Plaintiff a letter informing her that it was rescinding the Policy and refunding the premiums paid due to Mrs. Chowdhury's failure to disclose information about her medical conditions.[43]

## ANALYSIS

## I.    STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'"[44] In the Tenth Circuit, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[45] "Even when, as here, the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[46] A moving party may meet this burden "by showing that the nonmoving party does not have enough evidence to carry its burden of

---

[41]   Declaration of Gerald Bender, ¶ 17 (Docket No. 24).

[42]   Id. ¶¶ 15, 17.

[43]   Letter to Bashira Chowdhury (Mar. 8, 2005) (Docket No. 22, Ex. 12).

[44]   Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825 (10th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).

[45]   Pelt v. Utah, 539 F.3d 1271, 1280 (2008) (quotations, citations, and alteration omitted).

[46]   Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002) (citation omitted).

persuasion at trial."[47]

When determining whether a nonmovant has enough evidence to carry its burden at trial, the court does not weigh the evidence or determine credibility. Instead, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the [nonmovant's] favor."[48] Although a court views the evidence in a light most favorable to the nonmovant, it nevertheless does so "through the prism of the substantive evidentiary burden."[49]

## II.    APPLICABLE LAW

The Policy at issue was sold in the State of Utah through an agent of United of Omaha who was located in Utah. Both parties cite to Utah statute and case law as the applicable law. Under Utah statute, an insurance company may rescind a life insurance policy if an applicant misrepresented information and

> (a) the insurer relies on it and it is either material or is made with
> intent to deceive; or
> (b) the fact misrepresented or falsely warranted contributes to the
> loss.[50]

Based on the plain language of this statute, it is enough if an insurance company proves that it relied on a material misrepresentation by an applicant. It does not need to prove intent if the

---

[47] Id. (citation omitted).

[48] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[49] Id. at 254.

[50] Utah Code Ann. § 31A-21-105(2) (2009); see Derbidge v. Mut. Protective Ins. Co., 963 P.2d 788, 790–91 (Utah Ct. App. 1998) (citing conditions under which an insurance policy may be rescinded).

-8-

misrepresentation is material.[51]

A time limitation exists, however, on an insurance company's right to rescind. Utah statute

provides,

> If after issuance of a policy the insurer acquires knowledge of
> sufficient facts to constitute a general defense to all claims under the
> policy, the defense is only available if the insurer notifies the insured
> *within 60 days after acquiring the knowledge of its intention to*
> *defend* against a claim if one should arise, *or within 120 days if the*
> *insurer considers it necessary to secure additional medical*
> *information and is actively seeking the information at the end of the*
> *60 days.*[52]

At most, an insurance company has 120 days from the time it acquires knowledge of a material

misrepresentation to provide notice to the insured that it is rescinding a policy.

## III.   MATERIAL MISREPRESENTATIONS

Mrs. Chowdhury's life insurance application does not disclose that she had diabetes or other

medical conditions. "[T]o protect innocent insurance applicants, an applicant must be reasonably

chargeable with knowledge that the facts omitted or misrepresented were within the scope of

questions asked on the application."[53]  In other words, a reasonable person must understand that a

question calls for disclosure of specific information.[54]

Here, Plaintiff does not contend that Mrs. Chowdhury failed to comprehend that she had to

---

[51] Derbidge, 963 P.2d at 791.

[52] Utah Code Ann. § 31A-21-105(5) (2009) (emphasis added).

[53] West Coast Life Ins. Co. v. Hoar, 558 F.3d 1151, 1157 (10th Cir. 2009) (quoting Wade
v. Olinger Life Ins. Co., 560 P.2d 446, 452 (Colo. 1977)); see also Derbidge, 963 P.2d at 794.

[54] West Coast Life Ins. Co., 558 F.3d at 1157 (citing Wade, 560 P.2d at 452) (quotations and
alteration omitted).

-9-

disclose her diabetes to United of Omaha. Instead, Plaintiff claims that her mother did disclose this information to her life insurance agent and that the agent did not record the information on Mrs. Chowdhury's application when the agent completed it. To support this assertion, Plaintiff submitted an affidavit from Arif A. Chowdhury, M.D. ("Dr. Chowdhury"), the widower of Mrs. Chowdhury. Dr. Chowdhury asserts he was present when his wife disclosed her diabetes to United of Omaha's agent, that her diabetes has been discussed many times with the agent, and that the agent completed the application.[55] United of Omaha denies its agent was told this information.

Although the parties dispute whether Mrs. Chowdhury disclosed her medical conditions at the time the written application was completed, Plaintiff has provided no evidence to controvert the answers Mrs. Chowdhury provided during a telephone interview with a United of Omaha underwriter.[56] During that telephone interview, Mrs. Chowdhury was asked if she had any problems with her heart, arteries, high blood pressure, cancer, and so forth.[57] She answered "No." After being asked about a series of these specific medical conditions, Mrs. Chowdhury was then asked "Any other illness, injury, surgery, hospitalizations or other medical care?" She responded "No" to that question as well. She further said she had not had any blood tests or other studies and that she was not taking any medications. When asked about her parents, Mrs. Chowdhury said neither of her parents were living, both had died of natural causes, and that her mother was 83 and her dad was 60-

---

[55] Affidavit of Arif A. Chowdhury M.D., ¶ 3 (Sept. 17, 2008) (Docket No. 27).

[56] United of Omaha conducts telephone interviews "in the normal course of United's application process." Bender Declaration, ¶ 13 (Docket No. 24). "[A]n electronic recording of the telephone interview was made at the time of the telphone interview and maintained by United in the normal course of its business." Id.

[57] Bender Declaration, Ex. A, at 3 (Docket No. 24).

-10-

years-old when they died. When asked if her parents or brothers or sisters had been diagnosed with diabetes before the age of 65, she reported "No."

Plaintiff has offered no evidence to controvert that Mrs. Chowdhury had an extensive diabetic history, or that her parents and siblings had the same disease. Plaintiff has offered no evidence to controvert that Mrs. Chowdhury's father died of a "myocardial infarction at age 45," and that he "had diabetes at the time." Thus, regardless of what was disclosed during the written application, it is clear that Mrs. Chowdhury did not disclose truthful information about herself or her family during a telephone interview with United of Omaha's underwriter. It is also clear that Mrs. Chowdhury was chargeable with knowledge about her need to disclose such information.

The telephone interview was a normal part of the application process. Plaintiff has offered no evidence to controvert United of Omaha's declaration that information obtained from that interview was used "to determine if the policy could be issued, and on what terms."[58] Moreover, Plaintiff has provided no evidence to controvert United of Omaha's declarations that Mrs. Chowdhury's medical information was material.[59] Because these material facts are undisputed, the court concludes as a matter of law that Mrs. Chowdhury misrepresented material information during

---

[58] Bender Declaration, ¶ 12 (Docket No. 24).

[59] See Declaration of Frank Theisen, ¶¶ 5, 7 (Aug. 14, 2008) (Docket No. 23); Bender Declaration, ¶¶ 12–13, 15 (Docket No. 24). Plaintiff does argue that it needs additional discovery from United of Omaha to prove that Mrs. Chowdhury's diabetes was not material. Plaintiff requested discovery on all United of Omaha applicants who had diabetes so it could determine how other applicants were treated. United of Omaha objected to the discovery on the basis that it was overly broad, unduly burdensome, and that it required the disclosure of private information about third parties. Plaintiff did not file a motion to compel discovery. Consequently, Plaintiff cannot argue now that it needs more discovery to address United of Omaha's motion. Moreover, even if Plaintiff had filed a motion to compel, the court is not persuaded that such information would prove diabetes is not a material fact on an insurance application for purposes of determining whether a person will receive a preferred policy or any coverage at all. Plaintiff has therefore failed to provide information to controvert United of Omaha's evidence.

the application process. The court further concludes that United of Omaha relied upon that

information when determining whether coverage should be extended, and if so, under what type of

policy.

## IV.   KNOWLEDGE AND RESCISSION

### A.   Rescission

An insurance company may rescind "insurance if in its investigation, or in the medical

examination, it is found that there exists some sound reason, known to the applicant but not to the

insurance company, why the applicant was not insurable."[60]  Once an insurer acquires knowledge

of sufficient facts to defend against a claim, the insurer must provide notice to the insured within 60

days after acquiring that knowledge, "or within 120 days if *the insurer* considers it necessary to

secure additional medical information and is actively seeking the information at the end of the 60

days."[61]

Based on the plain language of the statute, even if an insurer has knowledge of sufficient facts

to defend against a claim, if *the insurer* considers it necessary to obtain additional medical

information and is actively seeking that information within the specified time frame, the insurer has

120 days in which to provide notice of rescission. While one may question why an insurer should

be afforded additional time to gather more medical records if it already has sufficient facts to defend

against a claim, the Utah legislature afforded insurers this right and it is not for this court to read that

right out of the statute. Accordingly, it is necessary to determine when United of Omaha obtained

sufficient facts to defend against a claim and whether it actively sought additional medical

---

[60]  Derbidge v. Mut. Prot. Ins. Co., 963 P.2d 788, 794 (Utah Ct. App. 1998) (quotations, citations, and alterations omitted).

[61]  Utah Code Ann. § 31A-21-105(5) (2009) (emphasis added) (emphasis added).

information to know whether United of Omaha had 60 days or 120 days to rescind the Policy.

## B. Date of Knowledge of Sufficient Facts

### 1. Knowledge Obtained by October 21, 2004

"[C]ourts have generally found insurance companies chargeable with knowledge of an undisclosed fact only where it has knowledge of evidence indicating the applicant was not truthful in answering the particular application questions at issue."[62] By at least October 1, 2004, United of Omaha received the Physician's Statement, which disclosed that Mrs. Chowdhury had chronic diabetes. The date of onset, however, was left blank. Accordingly, United of Omaha did not know if the diagnosis was made before or after Mrs. Chowdhury's Policy had issued thirteen months earlier. Without this information, United of Omaha could not determine if Mrs. Chowdhury had been truthful during the application process.

The medical records received on October 21, 2004 are of a different nature. Although they also do not list the date of onset, the medical records report that Mrs. Chowdury had a history of insulin-dependent diabetes, that diabetic peripheral neuropathy had set in, that she had hypertension or high blood pressure, chronic renal insufficiency, and that her family had a significant history of diabetes. This information controverts what Mrs. Chowdhury reported during her telephone interview. It also implies that Mrs. Chowdhury's diabetes was a long-term condition. Based on the nature and details of this information, a fact-finder could reasonably decide that United of Omaha had sufficient knowledge on October 21, 2004 to conclude that it had a defense against Plaintiff's claim because Mrs. Chowdhury was not truthful during the application process. This is a material fact in dispute.

---

[62] West Coast Life Ins. Co., 558 F.3d at 1160 (quoting Major Oil Corp. v. Equitable Life Assurance Soc'y, 457 F.2d 596, 604–05 (10th Cir. 1972)) (quotations omitted).

-13-

If a fact-finder concludes United of Omaha did have sufficient knowledge by October 21, 2004, then it is irrelevant whether United of Omaha had 60 days or 120 days to rescind the policy because United of Omaha did not rescind the Policy until March 8, 2005. Since this is well after 120 days, the rescission would be deemed untimely.

2.    Knowledge Obtained by November 10, 2004

The next analysis pertains to the medical records United of Omaha obtained on November 10, 2004."[63] These medical records stated that Mrs. Chowdhury had a "history of type I diabetes since 1986."[64] They also stated that her family history was "[s]ignificant for diabetes in both parents" and "[p]ositive for all of her siblings having diabetes mellitus."[65]

On November 24, 2004, Kathy Douglas in United of Omaha's Life Claims unit sent a memorandum to George Diaz in Underwriting, asking him to review the medical records United of Omaha had received during Worldwide's investigation. United of Omaha did not report receiving any additional medical records between November 10, 2004 and November 24, 2004. From this, one can conclude that Diaz was reviewing the documents described above.

On November 30, 2004, Diaz sent a handwritten note to Douglas informing her: "Per claim file was insulin dependent diabetic since 1986." He said it was a "Gross misrepresentation" and

---

[63] Defendant's Answers to Plaintiff's First Set of Interrogatories, at 25 (Docket No. 29, Ex. C). United of Omaha received the records from Worldwide. Worldwide received the documents on or before November 5, 2004. Because the parties did not brief the issue of whether Worldwide acted as an agent or independent contractor, the court will not address whether Worldwide's knowledge should be imputed to United of Omaha as of November 5, 2004 based on agency status.

[64] Univ. of Utah Hospitals and Clinics, Office Visit Note, CHO000154 (Docket No. 29, Ex. D).

[65] Univ. of Utah Hospitals and Clinics, Office Visit Note and Consultation Note, CHO000154, 157 (Docket No. 29, Ex. D).

-14-

asked if there was "any recourse under fraud doctrine here?" He also said, "Seems we were deliberately mislead here to avoid getting blood profile." Because Diaz derived this information and made these conclusions based on the University of Utah medical records, it is apparent the medical records contained sufficient facts for United of Omaha to conclude Mrs. Chowdhury made "gross misrepresentations" and deliberately misled the company. While these conclusions were made on November 30, 2004, United of Omaha had sufficient facts to make these conclusions by November 10, 2004. Thus, if a jury concludes United of Omaha did not have sufficient facts by October 21, 2004, the court concludes the undisputed evidence shows that United of Omaha was chargeable with knowledge on November 10, 2004.

Although United of Omaha acquired knowledge of sufficient facts to defend against Plaintiff's claim no later than November 10, 2004, by December 29, 2004, United of Omaha engaged Worldwide to obtain additional medical records of Mrs. Chowdhury. This request for additional medical records was made less than 60 days after United of Omaha acquired the medical records on November 10, 2004. Because United of Omaha determined it needed additional medical records and was actively seeking for them within the 60-day time allowance, it had 120 days to provide notice of rescission. United of Omaha sent the notice of rescission on March 8, 2005, which was within a 120 days of when it received the November 10, 2004 medical records. Accordingly, if a jury concludes that United of Omaha was *not* chargeable with knowledge on October 21, 2004, then United of Omaha properly rescinded the Policy within a 120 days of obtaining sufficient knowledge to defend against Plaintiff's claim.

-15-

## V.    PLAINTIFF'S OTHER CLAIMS

### A.    Breach of Covenant of Good Faith and Fair Dealing, Bad Faith, and Punitive Damages

United of Omaha also seeks summary judgment on Plaintiff's claim for breach of covenant of good faith and fair dealing. "[A]n implied covenant of good faith and fair dealing generally inheres in all contractual relationships."[66] This covenant embodies a "promise not to intentionally or purposely do anything that will destroy or injure the other party's right to receive the fruits of the contract."[67] This means an "insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."[68] Notably, however, "[t]he denial of a claim is reasonable if the insured's claim is fairly debatable."[69] Thus, "if an insurer denies an insured's claim that is fairly debatable, then the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so."[70]

Here, a legitimate dispute exists regarding when United of Omaha obtained sufficient knowledge about Mrs. Chowdhury's representations. United of Omaha is defending itself against a claim that is fairly debatable. It therefore cannot be liable for breach of covenant of good faith and fair dealing, and that claim is hereby dismissed.

Likewise, Plaintiff has failed to come forward with evidence that United of Omaha acted in

---

[66] Prince v. Bear River Mut. Ins. Co., 2002 UT 68, ¶ 27, 56 P.3d 524, 533 (quotations, citation, and alteration omitted).

[67] Id. (quotations, citations, and alteration omitted).

[68] Id. (quotations and citations omitted).

[69] Id. ¶ 28 (quotations, citations and alterations omitted).

[70] Id. (quotations, citations and alterations omitted).

bad faith. Besides the Policy at issue here, Mrs. Chowdhury obtained two other life insurance policies from United of Omaha, each with a face amount of $225,000. Although Mrs. Chowdhury appears to have made the same misrepresentations on her application for those policies, United of Omaha has paid them because Mrs. Chowdhury's death occurred more than two years after they were issued. United of Omaha has, therefore, not sought to avoid payment on policies that are beyond dispute. Instead, it is defending itself against a claim that is reasonably in dispute. Such actions do not support a claim for bad faith; accordingly, that claim is also dismissed. The court further concludes that Plaintiff is not entitled to punitive damages on any of her claims because Plaintiff has failed to offer evidence that United of Omaha has acted with the requisite willfulness and reckless indifference of her rights.

**B.      Equitable Estoppel**

Finally, United of Omaha seeks summary judgment on Plaintiff's claim for equitable estoppel. Plaintiff contends that United of Omaha should be estoped from rescinding the Policy because it accepted premiums from Mrs. Chowdhury and treated the Policy as though it was in full force and effect for more than a year. This argument ignores that an insurance company may investigate a claim if the claim is made within two years of the policy's issuance.[71] It also ignores the statutory right that an insurance company has to rescind a policy if it learns during its investigation that material facts were misrepresented during the application process. Given the presence of those facts in this case, United of Omaha may not be equitably estopped from asserting rights it has been afforded by law. Consequently, Plaintiff's equitable estoppel claim also fails as a matter of law and is hereby dismissed.

---

[71] See Utah Code Ann. § 31A-22-403(2) (2008).

-17-

## VI.    MOTION TO STRIKE AFFIDAVIT

United of Omaha also filed a motion to strike paragraphs 3, 5, and 6 of Dr. Chowdhury's affidavit "because they are based on conjecture, speculation and lack foundation and personal knowledge."[72] Because the facts stated in paragraphs 3, 5, and 6 were in dispute, the court did not consider the affidavit in making its determination. The motion therefore is moot.

### CONCLUSION

For the reasons stated above, the court hereby GRANTS IN PART and DENIES IN PART United of Omaha's Motion for Summary Judgment.[73] Plaintiff's claims for breach of covenant of good faith and fair dealing, bad faith and equitable estoppel are hereby dismissed with prejudice and the request for punitive damages is denied. Because a material fact is in dispute about when United of Omaha became chargeable with knowledge, summary judgment is denied on Plaintiff's breach of contract. Additionally, United of Omaha's request for declaratory judgment that it properly rescinded the Policy is denied.

The court DENIES AS MOOT United of Omaha's Motion to Strike Portions of Affidavit of Dr. Arif Chowdhury.[74]

SO ORDERED this **25th** day of June, 2009.

BY THE COURT:

Judge Clark Waddoups
United States District Judge

---

[72] Motion to Strike Portions of Affidavit of Dr. Arif Chowdhury, 1 (Oct. 6, 2008) (Docket No. 33).

[73] Docket No. 21.

[74] Docket No. 33.

-18-